GEORGE PHILLIPS v. ST. LOUIS-SAN FRANCISCO RAILWAY COMPANY, a Corporation, Appellant.—87 S. W. (2d) 1035.

Division One, November 12, 1935.*

*J. W. Jamison, C. H. Skinker, Jr.,* and *A. E. L. Gardner* for appellant.

*NOTE: Opinion filed at May Term, 1935, July 30, 1935; motion for rehearing filed; motion overruled at September Term, November 12, 1935.

*Douglas H. Jones* and *John W. Milford* for respondent.

GANTT, P. J.—Action for personal injuries resulting from the collision of an automobile with defendant's engine at a public crossing in Valley Park. Judgment for $24,500. Defendant appealed.

The petition alleged specific negligence, including a charge that defendant saw, or could have seen, plaintiff in imminent peril in time, by the exercise of ordinary care, to have reduced the speed of the engine, stopped the same, or sounded a warning and thereby avoided the collision. The answer was a general denial with pleas of contributory negligence. Plaintiff replied by general denial. The case was submitted solely under the humanitarian rule.

I. It is contended that the court should have directed a verdict for defendant. There was evidence tending to show the following:

Defendant's tracks extend north and south, and Marshall Avenue extends east and west across the tracks. East of and near defendant's right of way, St. Louis Avenue extends north and south. Plaintiff resided in northeastern Valley Park and was station agent of the Missouri Pacific Railroad at Glencoe, west of Valley Park. In going to and from Glencoe he daily crossed the tracks at Marshall Avenue. The tracks consisted of the two main lines and a spur east of the northbound main track. Plaintiff knew that defendant's northbound passenger train from Texas was due through Valley Park at

seven-twenty A. M. daily. On June 5, 1931, at seven-fifteen A. M. he left for Glencoe in an automobile with the front windows down and traveled southward on St. Louis Avenue to Marshall Avenue at twenty miles an hour. He moved westward on Marshall Avenue up the incline to the spur track at five miles an hour. On account of obstructions he could not see south of the crossing until within fourteen feet of the northbound main track. At that point he stopped the automobile and looked north and south. He saw no train approaching from either direction, and on proceeding westward at five miles an hour the front wheels of the automobile ran into a "chug hole" east of the east rail of the northbound track, which caused said wheels to jump said rail, thereby killing the motor. At that time he looked south and saw defendant's northbound passenger train fifteen hundred feet south of the crossing. He made several attempts to start the motor, and on again looking south he saw the engine within twenty-five to thirty yards of the crossing. Immediately he opened the north door of the automobile, intending to abandon the car. As he stepped on the running board, the engine collided with the automobile. At five miles an hour the automobile could be stopped in two or three feet. The train consisted of an engine and sixteen coaches. It was moving from thirty-five to fifty-five miles an hour and could have been stopped in from four hundred fifty. to eight hundred fifty feet. The signals at the crossing gave no warning of the approach of the train, no warning signals were given by the engine until it was within sixty to one hundred feet of the crossing, and the train brakes were not applied until the engine was within said distance of the crossing.

We think the questions of failure to reduce the speed or stop the train were properly submitted to the jury.

II. Defendant next contends that the instruction authorizing recovery on failure to warn was error.

Plaintiff argues that if warning had been given before he proceeded to cross the track, he would have waited for the train to pass. He was not in peril until the failure of the motor. At the time he proceeded to cross the track the engine was more than fifteen hundred feet from the crossing, and he had ample time to cross in safety. Absent peril, there was no duty on the part of the engineer to warn.

Furthermore, plaintiff was familiar with the crossing and the train. On failure of the motor he looked and saw the train fifteen hundred feet from the crossing. There is no evidence tending to show that thereafter he became oblivious of its approach. He was well aware of his peril. Absent obliviousness, there was no duty to warn. [Pentecost v. Terminal Railroad Co., 334 Mo. 572, l. c. 577, 66 S. W. (2d) 533.]

Plaintiff cites McNulty v. Pub. Serv. Co., 60 S. W. (2d) 701;

Moran v. A., T. & S. F. Railroad Co., 330 Mo. 278, 48 S. W. (2d) 881, and McGowan v. Wells, 324 Mo. 652, 24 S. W. (2d) 633.

In the McNulty case the plaintiff was standing between the rails of a street car track and saw an approaching street car eighty feet east of him. At that time his attention was directed to an automobile in the intersection and approaching from the west. On this account he became oblivious of the approaching street car and stopped on the track. It was correctly ruled that the question of plaintiff's obliviousness and the motorman's knowledge thereof was properly submitted on the issue of failure to warn. In other words, there was substantial evidence tending to show obliviousness.

The Moran case was an action under the Federal Employers' Liability Act. The negligence charged was failure to reduce the speed or stop the train. There was no charge of negligence in failing to warn. The reference to failure to warn was in connection with the consideration of assumption of risk. Furthermore, the plaintiff's back was to the approaching train.

The McGowan case was submitted on the humanitarian rule in failing to reduce the speed or stop. There also was no charge of negligence in failing to warn.

The other cases cited on the question are distinguishable on the facts.

It is clear that the failure to warn was not the proximate cause of the collision. The judgment should be reversed and the cause remanded. It is so ordered. All concur.